AO 442 (Rev. 12/85) Warrant for Arrest

# United States District Court

MIDDLE DISTRICT OF TENNESSEE (NASHVILLE DIVISION)

FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

AUG 29 2005

BY_____
DEPUTY CLERK

UNITED STATES OF AMERICA

V.   **CRIMINAL COMPLAINT**

ROBERT EARL STRIBLING     Case Number: 05-3090 MB

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about  August 26, 2005  in  Davidson  County, in the Middle District of Tennessee defendant did,

on an aircraft in the special aircraft jurisdiction of the United States, assaulted or intimidated a flight crew member or flight attendant of the aircraft, interfering with the performance of the duties of the member or attendant or lessened the ability of the member or attendant to perform those duties, or attempted or conspired to do such at act.

in violation of Title  49  United States Code, Section(s)  46504 . I further state that I am a(n)  Special Agent, FBI  and that this complaint is based on the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof:     ■ Yes    ☐ No

_____
Signature of Complainant

Special Agent, FBI

Sworn to me and subscribed in my presence,

  August 29, 2005                        at    Nashville, Tennessee
      Date                                          City and State

Joe B. Brown, United States Magistrate Judge     _____
Name & Title of Judicial Officer                   Signature of Judicial Officer

# STATEMENT IN SUPPORT OF COMPLAINT AND WARRANT

I, Adriaan Valk, being first duly sworn, do depose and state:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), assigned to the Nashville Resident Agency. I have been employed by the FBI for the past seven years, and am currently assigned as a member of the Joint Terrorism Task Force with special responsibility for criminal matters at the Nashville International Airport. I make this statement based upon personal knowledge derived from my participation in this investigation as well as information provided to me by other law enforcement officers.

2. In this capacity, I have become familiar with the following federal statute: *Interference with Flight Crew Members and Attendants*, 49 U.S.C. § 46504, which makes it unlawful for an individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, or attempts or conspires to do such at act.

3. On August 26, 2005, at about 8:00 p.m., I was contacted by the Metro Nashville Airport Authority Police and advised that U.S. Airways Flight 558, en route from Charlotte, North Carolina, to Nashville, Tennessee, had an unruly passenger on board who had assaulted one of the flight attendants. This flight had 70 passengers and crew on board. Due to the report of the assault on one of the flight's crew members, the Metro Nashville Airport Authority Police met the flight upon its arrival in Nashville.

4. Upon the flight's arrival in Nashville, officers from the Nashville Airport Authority Police entered the aircraft and took passenger ROBERT EARL STRIBLING into custody. The victim flight attendant, a passenger, and STRIBLING were interviewed.

5. While on final approach for landing in Nashville, the victim flight attendant approached STRIBLING and asked him to return his seat to the upright position for landing. STRIBLING was unresponsive and appeared to be asleep. The flight attendant attempted to awaken STRIBLING verbally, but he remained asleep. She then reached across another passenger and shook STRIBLING's shoulder. STRIBLING came awake, and swung his arm out, striking the flight attendant in the chest. She pulled away, but STRIBLING grabbed her by her uniform and pulled her back. She again pulled away, and attempted to point to his seat to indicate that he should raise it for landing. STRIBLING grabbed her arm, and pulled the flight attendant towards him. STRIBLING then struck her in the head with his open hand. The flight attendant pulled away, and STRIBLING grabbed the passenger seated

1

next to him, striking him in the chest and attempting to place him into a headlock. At this point, STRIBLING began to laugh.

6. The flight attendant then began reseating the passengers immediately around STRIBLING in order to get them away from him. She also reseated the passenger directly behind STRIBLING, because STRIBLING's reclined seat created a safety hazard during landing. After reseating the other passengers, STRIBLING began swinging his arms, which the flight attendant interpreted as an attempt to draw other passengers into the situation.

7. The flight's other two attendants were busy with landing duties in the rear of the aircraft, so the victim flight attendant requested several male passengers to assist her in the event she needed to subdue STRIBLING.

8. The victim flight attendant then called the cockpit, informed them of the incident and requested that they contact airport officials and ask that law enforcement officers meet the flight upon landing. She stated cockpit personnel later called her back for an update on the situation.

9. The victim flight attendant related that all of the above-described events comprising the incident with STRIBLING occurred during an approximate five-minute period following the second bell from the cockpit that notifies the flight attendants that the plane is ten minutes from landing. She stated that during this period in the flight, Federal Aviation Administration (FAA) regulations require that all passengers be in their seats with their seatbelts securely fastened.

10. The victim flight attendant advised that flight attendants are not to contact the cockpit during this critical phase of landing unless it is an emergency. The victim flight attendant considered this incident to be an emergency and, as stated, cockpit personnel re-contacted her further on in the landing process to obtain an update on the situation. Both of these contacts distracted the cockpit crew from their duties in safely landing the aircraft. Also, the victim flight attendant was not secured in her seat when she should have been, due to her efforts in trying to provide for the safety of STRIBLING and the passengers seated near him.

11. During an interview subsequent to waiving his Miranda rights, STRIBLING admitted that he had drunk seven (7) large beers over the course of several hours, prior to boarding this leg of his flight.

12. Based on the facts as recited above, I believe that there is probable cause to believe that ROBERT STRIBLING has violated 49 U.S.C. § 46505, Interference with Flight Crew Members and Attendants.